# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

| | |
|---|---|
| **MITCHELL LEE GRESHAM,** )  | |
| Petitioner, ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:02-0320** |
| ) | |
| **JOYCE CONLEY, Warden,** ) | |
| **FCI Beckley,** ) | |
| Respondent. ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

On April 9, 2002, Petitioner, an inmate then in confinement at FCI Beckley, Beaver, West Virginia,[1] filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* By a Person in State or Federal Custody.[2] (Document No. 1.) Petitioner filed on August 12, 2002, an "Amended and Supplemental Pleading Pursuant to Rule 15(d) FRCP." (Document No. 4.) By Standing Order filed on April 9, 2002, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

Pursuant to Rule 4 of the Rules Governing Section 2254 Proceedings in the United States District Courts, "[i]f it plainly appears . . . that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." From the record available to the Court, it appears that Petitioner is not entitled to relief

---

[1] The BOP's Inmate Locator indicates that Petitioner is currently incarcerated at Englewood FCI, Littleton, Colorado.

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

and his Application therefore, should be summarily dismissed.

## PROCEDURE AND FACTS

On August 10, 2001, Petitioner, while incarcerated at FCI Beckley,[3] was charged with Fighting with Another Person, in violation of the Federal Bureau of Prisons' [BOP] prohibited act code 201. (Document No. 1, p. 14, Exhibit A.) The details of the underlying charge are described in the Incident Report as follows:

> On the above date and time[, August 10, 2001 at 11:00 a.m.,] an investigation concluded and it was determined you engaged in a physical altercation with inmates Vaughn, Donita # 31523-037 and Leach, Kerr # 34212-037 on July 13, 2001, at approximately 10:30 a.m. Specifically, you claim inmates Vaughn and Leach assaulted you with a sharpened instrument in the basement of Lee Hall. However, inmate witnesses observed you attempt to strike inmates Vaughn and Leach with a walking cane and Vaughn and Leach pushed you into the television room of the basement where a fight ensued. Inmate Vaughn admitted to striking you twice on the head with a plastic toilet brush causing injuries to your head area. Furthermore, you sustained a laceration on the top of your head and bruising on the left flank/thigh area. The head injury was treated with nine (9) sutres.

(Id. pp. 14-15.) The Unit Disciplinary Committee [UDC] concluded that Petitioner was involved in the altercation and therefore, committed the prohibited act. (Id., p. 14.) The matter was referred to the Disciplinary Hearing Officer [DHO] with a recommendation that Petitioner be sanctioned with a loss of good conduct time. (Id.) Investigator T. Malone's Investigation Report revealed the following:

---

[3] On August 26, 1997, in the United States District Court for the District of Maryland, Petitioner pled guilty to, and was convicted of one count of conspiracy to distribute and possess with intent to distribute a quantity of a mixture or substance containing detectable amounts of cocaine and aiding and abetting, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 (Count 1s), and two counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a) (Counts 2s and 4s). *United States v. Gresham*, Criminal Case No. 1:97-00162-01 (D. Md. Jan. 28, 1999). The District Court sentenced Petitioner on January 28, 1999, to a total term of imprisonment of 188 months. (*Id.*) On May 30, 2003, Petitioner filed his Motion to Reduce Sentence under Rule 35 of the Federal Rules of Criminal Procedure. *Id.* By Order entered September 11, 2003, the District Court amended its prior Judgment in a Criminal Case and reduced Petitioner's sentence to reflect a total term of imprisonment of 121 months to be followed b concurrent five year terms of supervised release on Counts 1s and 4s. (*Id.*)

> Inmate Gresham [was] given a copy of this report and advised of his rights as written in Section 23. He stated he understood his rights as read. He then waived his rights by providing the following statement, "I did not use a cane. Vaughn came up to my cell and said that I needed to go with him down to check in. When I got downstairs I was jumped Vaughn was in front of me and Leach in back. Vaughn hit me with a lock in a sock and I don't know what Leach hit me with but you can see that I have a wound on top of my head and one in back. I ran upstairs and into my room and thank God the officer was there to hit the alarm because they had a shank and I believe they were going to kill me.[] I never hit either one of them and at no time was it a fight, they assaulted me."

(Id., p. 16.)

Petitioner's DHO hearing was conducted on August 21, 2001.[4] (Id., pp. 17-19.) Petitioner waived his right to have staff representation and did not request to produce any witnesses. (Id., p. 17.) Petitioner provided the following statement during the hearing: "I didn't get a chance to fight back. It happened so quick I didn't get a chance to do anything. My cane was in my hand. I didn't get a chance to use it. They told me to check in because they heard I was hot. I was attacked." (Id.) In addition to Petitioner's statement and the Incident and Investigation Reports, the DHO, in rendering his decision, considered an SIS Report, including inmate statements, and medical assessment forms. (Id., p. 18.)

After considering Petitioner's testimony, statements from inmate witnesses, the medical assessment forms, and the written reports, the DHO found that Petitioner committed the prohibited act of Fighting with Another Person, in violation of BOP prohibited act code 201. (Id.) The DHO found that although Petitioner was not the aggressor of the incident, the inmate witness stated that he saw Petitioner strike the two inmates with his cane.[5] (Id.) The DHO imposed the following sanctions against Petitioner:

---

[4] Curtis L. Hise served as the Discipline Hearing Officer at Petitioner's August 21, 2001, hearing. (Document No. 1, pp. 17-19, Exhibit A.)

[5] With respect to the specific evidence relied on to support the DHO's findings, the DHO Report states, in part, as follows:

> The DHO relied heavily on the written statement of the reporting staff member. Lt. Gerald reports his initial investigation revealed you engaged in a physical altercation with inmates Donita Vaughn, Reg. No. 31523-037 and Kerr Leach, Reg. No. 34212-

(1) a disallowance of 27 days of good conduct time [GCT], and (2) a 20 day term of detention in disciplinary segregation, suspended pending 180 days of clear conduct. (Id.) The DHO recommended Petitioner receive a disciplinary transfer. (Id.) The reason for the sanctions was stated as follows:

> By becoming involved in a fight with another inmate you threatened the safety, health and welfare of not only yourself and the other inmates involved but all other staff and inmates within the institution. These type incidents have been known to escalate to involve groups of inmates and will not be tolerated. The disciplinary transfer was recommended due to the fact your presence in this institution could cause additional incidents. The sanctions imposed by the DHO were taken to let you know you will be held responsible for your actions.

(Id.) Petitioner unsuccessfully appealed the DHO's decision to the Regional and Central Offices. (Document No. 1, p. 21-26 and Exhibits C and D.)

Petitioner filed his Application under 28 U.S.C. § 2241 in this case on April 9, 2002, in which he seeks to appeal the DHO's decision. (Document No. 1, p. 6.) Essentially, Petitioner is challenging the credibility of the inmate witness, Jerry Malone. Petitioner explains that he was previously incarcerated at FCI Cumberland, where inmate Vaughn, after learning that Petitioner had cooperated with

---

> 037. Specifically, Vaughn and Leach struck you with a sharpened instrument. You were observed striking Vaughn and Leach with your walking cane by inmate witnesses. You were pushed into a television room where the fight continued. During the altercation Vaughn struck you in the head with a plastic toilet brush. The injuries you sustained during the incident were consistent with the description of the incident in Section 11 of the report.
>
> You deny fighting with inmates Vaughn and Leach. You claimed you were attacked and had no chance to retaliate. The DHO conceded the evidence did indicate Vaughn and Leach were the aggressors of the incident. However, the DHO could not ignore the inmate witnesses Jerry Malone, Reg. No. 43248-043. He was determined not to have any direct relationship with any of the inmates involved and gave details consistent with other evidence. Sanctions were imposed based on the fact the other inmates were determined to be the aggressors. Inmate Vaughn admitted being involved in the fight with you. The greater weight of the evidence supports the charge and the finding of the DHO.

(Document No. 1, p. 18, Exhibit A.)

4

governmental officials, threatened his life. (Id., p. 9.) Word spread fast that Petitioner was a "snitch," causing Petitioner to request a transfer to another minimum security BOP facility in another region. (Id.) He was transferred to FCI Petersburg where he purchased some type of "certificates" through Jerry Malone, a then Special Investigative Services' [SIS] informant. Jerry Malone reported the purchase to SIS, resulting in Petitioner receiving charges for violating BOP prohibited act codes 313 and 314. (Id., p. 10.) Inmate Vaughn subsequently advised Petitioner "to check-in for [his] life." (Id.) To obtain protective custody status, FCI Petersburg officials required Petitioner to reveal the names of the inmates who had threatened him, or he would be returned to the main compound. (Id.) Petitioner refused to reveal the names and was returned to the main compound. (Id.) The threats recurred and prison officials advised him to speak with Case Manager Harding about the threats. (Id.) While en route to Mr. Harding's office, Petitioner avers that he was attacked by Leach and Vaughn "who wielded a knife and a lock in a sock, not a toilet brush." (Id.) Petitioner contends that he was "completely caught off-guard by the attack" and was unable to defend himself. (Id., p. 11.) He alleges: "Jerry Malone testified falsely about seeing me fight because he had a problem with me and therefore had it out for me." (Id., p. 12.) Because there were no correctional officer witnesses, Petitioner requests the following relief:

> I would like this matter investigated, my 27 good time days that were taken reinstated, the 5-points added to my custody level, because of the 201 violation, removed and I be placed back in my rightful standing which would result in me being placed in my original low custody level, but I ask this court to order that I be allowed to be transferred to a low institution outside my region for safety purposes.

(Id.)

On August 12, 2002, Petitioner filed an "Amended and Supplemental Pleading Pursuant to Rule 15(d) FRCP." (Document No. 4.) To this pleading, Petitioner attaches "two pages, of substantial proof that word had circulated around FCI Petersburg that he, the petitioner, was a rat for speaking with agents on several occasions." (Id., p. 1.) Petitioner attaches to his supplemental

pleading a copy of a BOP Investigation Report, dated May 18, 2001, and prepared by SA Robert Heinzman, Jr. (Id., pp. 5-6.) The Report indicates that Petitioner was contacted by another inmate at FCI Petersburg, who asked him to have his wife killed. (Id.) The other inmate told Petitioner that he would pay him $10,000.00 to kill her and that the money was that he had hidden from the government. (Id.) Petitioner alleges that this Report proves that he was known as a "rat" within the prison system. (Id., p. 1.)

Finally, on April 5, 2005, Petitioner filed his "Motion for Judgment on the Petition Pursuant to Title 28 Sec. 2243 and Fed. R. Civ. P. 12c." (Document No. 18.) Petitioner contends that judgment should be entered in his favor "because the respondent failed to show cause why the writ should not be granted." (Id.) He further contends that "further delay in judgment may cause [him] harm, such as extended incarceration or halfway house stay because [he] is due for release to a halfway house on 09/06/2005." (Id.)

## ANALYSIS

Title 28, U.S.C. § 2241(c)(3) provides that a writ of *habeas corpus* shall extend to a federal prisoner if he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). Because Petitioner is challenging one aspect of his prison disciplinary hearing, the undersigned considers his claim as a violation of his Fifth Amendment right to due process. Although the Fifth Amendment of the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law", the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for the period of incarceration. See U.S. Const. amend. V; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction and imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does

not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id., 515 U.S. at 484, 115 S.Ct. at 2300 (Citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life []", the inmate's claims have no merit. Id.

Essentially, Petitioner contends that he was denied due process when the DHO, by assigning greater weight to an inmate witness' statement over Petitioner's statement, sanctioned him by disallowing 27 days of good conduct time and imposing a suspended 20 day placement in disciplinary segregation. The Supreme Court has held that an inmate has "no legitimate statutory or constitutional entitlement" to any particular custodial classification which is sufficient to invoke due process even if a change in classification would impose a "grievous loss" on the inmate. Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976). According to the Supreme Court, Congress has given federal prison officials full discretion to control the classification of prisoners residing in their institutions. Id. (*citing* 18 U.S.C. § 4081). Furthermore, pursuant to 18 U.S.C. §3621(b) the Bureau of Prisons has the authority to direct confinement of federal prisoners "in any available facility and may transfer a prisoner from one facility to another at any time." See Prows v. Federal Bureau of Prisons, 981 F.2d 466, 469 n. 3 (10th Cir. 1992), cert. denied, 510 U.S. 830, 114 S.Ct. 98, 126 L.Ed.2d 65 (1993);

Barden v. Keohane, 921 F.2d 746, 483 (3d Cir. 1991).

Likewise, "the Due Process Clause itself does not create a liberty interest in credit for good behavior." Sandin, 515 U.S. at 477, 115 S.Ct. at 2297. Title 18, U.S.C., § 3624(b)(1),[6] however, provides that federal inmates are *eligible* to receive good conduct time if they comply with BOP institutional disciplinary regulations. 18 U.S.C. § 3624(b)(1). The decision to award such credit is vested solely within the discretionary authority of the BOP. Id. Section 3624(b)(1) provides that a prisoner serving a term of imprisonment greater than one year "*may* receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, . . . *subject to* determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1) (emphasis added). If the BOP determines that the prisoner "has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit . . or shall receive such lesser credit *as*

---

[6] Title 18, United States Code § 3624(b)(1) provides:

**(b) Credit toward service of sentence for satisfactory behavior. –**
   (1) Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree. Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

*the Bureau determines to be appropriate*." Id. (emphasis added). The award of any credit under this section does not vest until the federal prisoner is released from the BOP's custody. See 18 U.S.C. § 3624(b)(2). Federal inmates thus are eligible, but not entitled, to receive good conduct time and therefore, do not have an expectation interest, or otherwise possess a liberty interest, in the award of such credit. See Burrell v. Gunja, 2001 WL 34713499, *4 (D. Md. June 8, 2001)("Under 18 U.S.C. § 3624(b), good conduct time awarded after April 26, 1996, does ot vest until an inmate is released. Therefore, Burrell cannot be deprived of good conduct credit which he does not yet have, i.e., which has not vested. The award of good time under the statute can only create a possibility of early release for inmates. Because the statute does not create any liberty interest in the award of good conduct time, there is no inherent due process right in the award of good conduct time, there is no inherent due process right to good time credits."). Although a sanction of good conduct time in essence increases the inmate's actual period of confinement, such an increase does not violate the Due Process Clause because it does not impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[7] Such a sanction does not change the substance of the District Court's sentence of imprisonment. Accordingly,

---

[7] Although the Supreme Court rejected in *Sandin* the mandatory/discretionary language analysis of prison regulations in determining whether an inmate possesses a certain liberty interest, the Court notes that the April 26, 1996, amendment to 18 U.S.C. § 3624(b) [Pub. L. 104-134, Title I, § 101[(a)][Title VIII, § 809(c)], Apr. 26, 1996, 110 Stat. 1321-76], changed the language "shall receive credit" to "may receive credit." Furthermore, 28 C.F.R. § 523.20 provides that pursuant to 18 U.S.C. § 3624(b) "for offenses committed on or after November 1, 1987 but before April 26, 1996, an inmate earns 54 days credit toward service of sentence (good conduct time credit) for each year served." 28 C.F.R. § 523.20. Credit awarded for offenses committed during this time period vested upon receipt. 18 U.S.C. § 3624(b)(1994). For offenses committed on or after April 26, 1996, in awarding good conduct time, the BOP must consider whether the inmate has "earned or is making satisfactory progress . . . toward earning a General Educational Development (GED) credential before awarding good conduct time credit." 28 C.F.R. § 523.20. These changes in the award of good conduct time together with the repeal of 18 U.S.C. § 4161, [Pub. L. 98-473, Title II, § 218(a)(4), Oct. 12, 1984, 98 Stat. 2027] further evidence Congress' intent that inmates are not entitled to and do not have a liberty interest in the receipt of, good conduct time credit.

Petitioner's punishment simply did not amount to the sort of restraint upon his liberty which is actionable under Sandin. Nor did it amount to "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Nevertheless, even had Petitioner possessed a liberty interest in the receipt of good conduct time under 18 U.S.C. § 3624(b), the Court finds that Petitioner has not demonstrated that his DHO hearing violated the Due Process Clause of the Fifth Amendment. The Supreme Court has stated that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Morrissey v. Brewer, 408 U.S. 471, 488, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). The Supreme Court has determined that to comport with the requirements of due process, prison officials must provide the following procedural safeguards to a prisoner when conducting disciplinary hearings: (1) written notice of the charged violations, (2) disclosure of evidence against the prisoner, (3) the right to call witnesses and present document evidence in the prisoner's defense, (4) a neutral and detached hearing body, and (5) a written statement by the factfinders as to evidence relied on and reasons for disciplinary action. Wolff, 418 U.S. at 564, 94 S.Ct. at 2978-79; Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); Segarra v. McDade, 706 F.2d 1301, 1304 (4th Cir. 1983).

Petitioner does not contend that he was denied any of the above-stated due process requirements established in Wolff. Rather, he alleges that Jerry Malone's statement was false because he previously worked with the SIS and "had a problem with [Petitioner] and therefore had it out for [him]." Petitioner does not offer any evidence that Mr. Malone's statement was in fact false or that the DHO had any reason to believe the statement was false. His conlcusory statement is not enough to establish a due process violation. Accordingly, Petitioner has failed to demonstrate that any action of the Respondent deprived him of his constitutional right to due process of law.

Furthermore, the undersigned finds that the DHO's decision is supported by some evidence. In Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454-56, 105 S.Ct. 2768, 2773-74, 86 L.Ed.2d 356 (1985), the Supreme Court held that to comport with the requirements of due process, the prison disciplinary hearing board's decision revoking a prisoner's good time credits must be supported by "some evidence in the record." The relevant inquiry is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56, 105 S.Ct. at 2774. The BOP has adopted a slightly higher standard than that established in Hill, requiring the DHO to base her decision on the "greater weight of the evidence." BOP P.S. 5270.07. The phrase "greater weight of the evidence" refers to the merits of the evidence produced, and not to the quantity of witnesses presented. Id. Accordingly, pursuant to BOP regulations, the controlling inquiry is whether the DHO's decision was based on the greater weight of the evidence.

The DHO's report indicates that he primarily based his decision on the reporting staff member's written Incident Report, and further considered the SIS Investigation Report completed on August 10, 2001, medical assessment forms, and inmate statements. The Incident Report, as prepared by Lieutenant K. Gerald, SIS, indicated that Petitioner and two other inmates were involved in an altercation. The Report also indicated that another inmate, who witnessed at least part of the altercation, observed Petitioner hit someone with his walking cane. The DHO determined that the eyewitness had no direct relationship with either Petitioner or the other two inmates involved in the altercation, and further determined that the witness' statement was consistent with other evidence. Furthermore, Vaughn, one of the two other inmates, admitted his involvement in the altercation with Petitioner. Upon determining that Petitioner failed to present any credible evidence, the DHO found that the greater weight of the evidence established by the specific observations and statements from the inmate eyewitness, the reporting officer, Inmate Vaughn's admission, and the medical forms, supported a finding that Petitioner

committed the prohibited act as charged, although he was not the aggressor. The undersigned finds that the DHO's decision is supported by both "some evidence" and the "greater weight of the evidence," and was not rendered in an arbitrarily or capricious manner. Accordingly, Petitioner has failed to demonstrate that any action by the DHO deprived him of his constitutional right to due process of law.

### PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Petitioner's Motion for Judgment on the Petition (Document No. 18.), **DISMISS** Petitioner's § 2241 Application (Document No. 1.) and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81

L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner, *pro se*.

ENTER: August 16, 2005.

                                            R. Clarke VanDervort
                                            United States Magistrate Judge